UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PATRICIA TARSIO,

              Plaintiff,

    -against-

TOWN OF NEW WINDSOR and
GEORGE MEYERS, JR.,

              Defendants.
-----------------------------------------------------------x

No. 24-cv-01220

**COMPLAINT**

**JURY TRIAL
DEMANDED**

By and through her counsel, Sussman & Goldman, plaintiff PATRICIA TARSIO, as and for her Complaint against defendants TOWN OF NEW WINDSOR and GEORGE MEYERS, JR., hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for gender discrimination/sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"), and the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.* (hereinafter "NYSHRL").

## PARTIES

2. Plaintiff PATRICIA TARSIO is a female of legal age, who resides in the County of Orange, State of New York, which is within this judicial district.

3. Defendant TOWN OF NEW WINDSOR (hereinafter "Town") is a municipal corporation organized and existing pursuant to the laws of the State of New York.

4. Defendant GEORGE MEYERS, JR. is a male of legal age, who resides within the County of Orange, State of New York and, at all times relevant hereto, served as a Town Justice for the Town of New Windsor Justice Court.

1

## JURISDICTION AND VENUE

5. As this action seeks to redress violations of plaintiff's federal statutory rights under Title VII, this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

6. As plaintiff's state law claims are so related to her federal claims that they form part of the same case or controversy as her federal claims, this Honorable Court has supplemental jurisdiction over such state law claims under 28 U.S.C. § 1367(a).

7. The events giving rise to the claims asserted herein occurred primarily in the County of Orange, State of New York, which is within this judicial district and, therefore, venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND COMPLIANCE WITH CONDITIONS PRECEDENT

8. On or about June 20, 2023, plaintiff submitted a Charge of Discrimination to the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging discrimination on the basis of sex and retaliation.

9. On December 5, 2023, the Civil Rights Division of the U.S. Department of Justice issued plaintiff a right to sue letter.

10. On or about June 20, 2023, plaintiff served a notice of claim upon the defendant Town of New Windsor in compliance with Sections 50-e and 50-i of the New York General Municipal Law ("GML").

11. On or about October 26, 2023, plaintiff gave testimony under oath at an examination conducted by counsel for the defendant Town in compliance with Section 50-h of the GML.

12. More than thirty days have elapsed since plaintiff served her notice of claim, and the defendant Town has failed or refused to make adjustment of her claims.

## FACTUAL ALLEGATIONS

13. Plaintiff has been employed by the Town of New Windsor as a clerk in the Town's Justice Court since in or about 2008; she holds the civil service title of Assistant Court Clerk and, in or about August 2020, was appointed by the defendant Town as the Senior Court Clerk, a title she continues to hold.

14. The Town of New Windsor Justice Court has two Town Justices – Noreen Calderin, who has served since in or about January 2010, and defendant George Meyers, Jr., who has served since in or about January 2018.

15. Since her appointment to Senior Court Clerk, plaintiff has overseen the operation of the Clerk's Office and has served both Town Justices.

16. Starting in or about 2021, Judge Meyers repeatedly made inappropriate comments to plaintiff about her physical appearance and asked her to go out to have drinks with him or attend other social activities.

17. Plaintiff has always declined these propositions, which have made her work environment awkward and uncomfortable.

18. By way of example, on one occasion, when plaintiff was in his chambers preparing for court, Judge Meyers commented, in sum and substance: "You look nice in that dress, and I have a suit on; we should skip court and go out for dinner and drinks."

19. This comment caused plaintiff to feel very uncomfortable and discouraged her from wanting to wear dresses to work.

20. By way of further example, in or about August 2021, Judge Meyers invited plaintiff to meet him and one of his (male) friends for drinks at local restaurant and, after plaintiff declined,

later that evening, he texted her a picture of a bottle of scotch and noted they were now at his residence and invited her to join; again, plaintiff declined.

21. Judge Meyers has also discussed in the office details about his personal romantic relationships.

22. By way of example, in or about mid-to-late 2022, when discussing with the other two female clerks in the office his relationship with a girl he was then dating, Judge Meyers remarked, in sum and substance: "I don't know why they (meaning women) want to call and talk on the phone; we (meaning men) don't want to have these long conversations, we just want to know if we are going to have sex."

23. The next day, the other clerks made plaintiff aware of this comment, which all agreed was inappropriate and which, again, made plaintiff feel very uncomfortable.

24. The other two clerks have commented to plaintiff that they have noticed Judge Meyers paying particular attention to plaintiff in the workplace and the fact that he has invited her, and only her, to go out for drinks with him.

25. This caused plaintiff to feel that Judge Meyers' conduct was creating a false perception in the workplace that they were involved in a romantic or other close personal relationship.

26. In fact, one of the clerks once commented to plaintiff that, if she did not know plaintiff and plaintiff's husband as well as she did, she would think that there was something (romantic) going on between plaintiff and Judge Meyers.

27. This false perception has caused plaintiff to feel awkward and uncomfortable in the workplace.

28. For the 2022 end-of-year holidays, as they had done in prior years, the two Town Justices made plans for a holiday party for employees of the Town Justice Corut, including the clerks and court officers.

29. The party was to be held at a local restaurant on January 5, 2023 and, while it was customary for the clerks to attend, there was no obligation for them to do so.

30. By this date, based largely on his inappropriate workplace comments, propositions for her to join him out for drinks, and paying extra special attention to her at work, as described hereinabove, plaintiff had become very uncomfortable with Judge Meyers and, because of this, was disinclined to attend the holiday party.

31. Plaintiff also understood that the other clerks were similarly uncomfortable around Judge Meyers and were also disinclined to attend.

32. When plaintiff and the other two clerks indicated their disinclination to attend the holiday party, Judge Meyers stated in the office for all to hear, in sum and substance, "I don't care, but whatever happens, our senior clerk [referring to plaintiff] must come out for a drink!"

33. Then, as he was leaving the office, he remarked, again loud enough for all to hear, "Tarsio [again, referring to plaintiff], you better not disappoint," thereby continuing to single plaintiff out.

34. Despite her reluctance, plaintiff decided to attend because the other two clerks indicated they would also go and she wanted to be there to support Judge Calderin, who would be attending.

35. Indeed, earlier that same day, when Judge Calderin was in his office, Judge Meyers remarked to her, in sum and substance, that if "I had my way, then we would both just get shitfaced and go back to my place, but since you're married, that's not happening."

36. Judge Calderin reported Judge Meyers' comment to plaintiff.

37. In addition to the two judges and three clerks, a court officer and his wife also attended the holiday party.

38. After arriving at the restaurant, and as the group was being seated, Judge Meyers told plaintiff, "I found a drink just for you."

39. After they sat and were given their menus, Judge Meyers got up from his chair, walked over to plaintiff (who intentionally sat at the opposite end from him) and, while pointing in the menu to a drink called "Bananas and Blow," told her, "this is the drink I thought of for you."

40. This shocked and embarrassed plaintiff, and she responded, "Um, no!"

41. Soon thereafter, a waitress came to take drink orders and, when reviewing the drinks with plaintiff, mentioned "Bananas and Blow," to which Judge Meyers remarked, for all at the table to hear, "that's the drink that I thought of for Trish!"

42. This again shocked and embarrassed plaintiff, and others present later told her they thought it was inappropriate.

43. In the wake of this comment, the next day, plaintiff reported to Judge Calderin her ongoing concerns about Judge Meyers' treatment of her and that she believed his behavior to be sexually harassing and inappropriate.

44. Judge Calderin tried to schedule a meeting with Judge Meyers and plaintiff to discuss this situation; however, not long before the meeting was to commence, Judge Meyers canceled it.

45. Since Judge Meyers' father was then the Town Supervisor, plaintiff's complaint was sent to the Town Attorney for investigation.

46. Plaintiff has also submitted a complaint to the Unified Court System's Inspector General, which was also referred to the Committee on Judicial Conduct.

47. Upon information and belief, Judge Meyers became aware of plaintiff's several complaints.

48. After she complained about his conduct as described herein, Judge Meyers began retaliating against plaintiff, treating her much more harshly at work – insisting she remain at her desk and emailing her in a hostile and threatening manner.

49. By way of example, though she has been worked exclusively for Judge Calderin, Judge Meyers continued to insist upon asserting control of her work environment in a manner seemingly designed to set her up for later adverse action.

50. Furthermore, on more than one occasion, Judge Meyers chastised plaintiff for being away from her desk, even though she was elsewhere in the building for work-related reasons.

51. Judge Meyers' hyper-attention to and hyper-criticism of plaintiff continued and intensified after she filed her Notice of Claim and EEOC Charge in June 2023.

52. By way of example, in the fall of 2023, before the November election, and so before it was clear who the incoming administration would be, during an office meeting, Judge Meyers criticized Judge Calderin and the clerk's office and announced that things were going to "change" and that people would be "leaving" once the new administration took office, a remark perceived to be directed toward her.

53. Judge Meyers has also insisted that plaintiff not enter the courtroom while he is on the bench, thereby making more difficult her ability to carry out her duties as Senior Court Clerk.

54. Judge Meyers' creation of a sexually hostile work environment and retaliation against plaintiff after she complained about it have caused her to suffer significant and severe emotional distress, including, without limitation, fear, anxiety, humiliation, embarrassment, and depression.

55. Indeed, the work environment has become so hostile and toxic that, starting on or about January 9, 2024, plaintiff has been working from home on the day(s) that Judge Meyers is present for court duties.

56. The fact that plaintiff has been permitted to work from home has caused one of the other clerks to become hostile toward plaintiff for this perceived "privilege," though plaintiff does not view it as such, but rather a necessary accommodation so that she can perform her duties in an environment where she feels safe.

57. Judge Meyers' conduct has also caused plaintiff to suffer pecuniary harm because, while she is a licensed real estate salesperson and has earned income in this capacity in the evenings and on weekends, Judge Meyers' hyper-criticism of her attendance and work habits has dissuaded her from engaging in this business for fear that he would accuse of her of doing so during working hours, though she has never done so and would never do so.

### JURY DEMAND

58. Plaintiff hereby demands a jury trial.

### CLAIMS FOR RELIEF

### COUNT I
### Sexual Harassment/Hostile Work Environment Based on Gender
### Title VII, 42 U.S.C. § 2000e, *et seq.*
### (Against defendant Town of New Windsor)

59. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "58" above.

60. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

61. Defendant Town of New Windsor employs more than 15 employees and, at all relevant times, was plaintiff's employer.

62. By dint of defendant Meyers' conduct as described hereinabove, the defendant Town has subjected plaintiff to a sexually hostile work environment, thereby discriminating against her in the terms, conditions or privileges of her employment because of her gender in violation of Title VII.

63. As a direct and proximate result, plaintiff has suffered both economic and non-economic damages.

### COUNT II
**Unlawful Retaliation**
**Title VII, 42 U.S.C. § 2000e, *et seq.***
**(Against defendant Town of New Windsor)**

64. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "58" above.

65. Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

66. Defendant Town of New Windsor employees more than 15 employees and, at all relevant times, was plaintiff's employer.

67. By dint of defendants Meyers' conduct as described herein above, the defendant Town has retaliated against plaintiff for her internal and external reports and complaints of sexual harassment by Judge Meyers in violation of Title VII.

68. As a direct and proximate result, plaintiff has suffered both economic and non-economic damages.

## COUNT III
### Sexual Harassment/Hostile Work Environment Based on Gender
### NYSHRL, N.Y. Exec. L. § 290, *et seq.*
### (Against all defendants)

69. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "58" above.

70. The NYSHRL makes it unlawful for "an employer . . . , because of an individual's . . . sex, . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(a).

71. The NYSHRL also makes it unlawful for "an employer . . . to subject any individual to harassment because of an individual's . . . sex . . . , regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims." *Id.* § 296(h).

72. The NYSHRL also makes it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." *Id.* § 296(6).

73. Defendant Town employees more than 15 employees and, at all relevant times, was plaintiff's employer.

74. By dint of defendant Meyers' conduct as described hereinabove, the defendant Town has subjected plaintiff to a sexually hostile work environment, thereby discriminating against her in the terms, conditions or privileges of her employment because of her gender in violation of the NYSHRL.

75. As plaintiff's supervisor and direct perpetrator of the gender-based harassment set forth herein, defendant Meyers is liable as an aider and abettor.

76. As a direct and proximate result, plaintiff has suffered both economic and non-economic damages.

## COUNT IV
### Unlawful Retaliation
### NYSHRL, N.Y. Exec. L. § 290, *et seq.*
### (Against all defendants)

77. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "58" above.

78. The NYSHRL makes it unlawful for "any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article." N.Y. Exec. L. § 296(7).

79. The NYSHRL also makes it unlawful for "an employer . . . to subject any individual to harassment because . . . the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims." *Id.* § 296(h).

80. The NYSHRL also makes it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." *Id.* § 296(6).

81. Defendant Town employees more than 15 employees and, at all relevant times, was plaintiff's employer.

82. By dint of defendants Meyers' conduct as described herein above, the defendant Town has retaliated against plaintiff for her internal and external reports and complaints of sexual harassment by Judge Meyers.

83. As plaintiff's supervisor and direct perpetrator of the retaliation as set forth herein, defendant Meyers is liable as an aider and abettor.

84. As a direct and proximate result, plaintiff has suffered both economic and non-economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Accept jurisdiction over this action and all parties;

B. Empanel a jury to hear all claims;

C. Adjudge and declare that defendants have violated plaintiff's rights under Title VII and the NYSHRL:

D. Enjoin defendants to refrain from discriminating or retaliating against plaintiff and enter any and all injunctive relief necessary to prevent and address such discrimination and retaliation;

E. Award to plaintiff compensatory damages, including backpay, with pre- and post-judgment interest;

F. Award to plaintiff punitive damages with pre- and post-judgment interest;

G. Award to plaintiff the reasonably incurred attorneys' fees and litigation costs associated with the prosecution of this matter;

H. Award such additional relief as the Court deems just, proper and equitable under the circumstances.

Dated: Goshen, New York
February 19, 2024

          SUSSMAN & GOLDMAN
          *Attorneys for Plaintiff*

          By: _____
          Jonathan R. Goldman, Esq. (JG8710)
          1 Railroad Avenue, Suite 3
          P.O. Box 1005
          Goshen, New York 10924
          (845) 294-3991 [Tel.]
          (845) 294-1623 [Fax]
          jgoldman@sussman.law